UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 06-CV-97-JBC

RAUGHN LEWIS                                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

SHERRY GOULD, ET AL.                                                   DEFENDANTS

Raughn Lewis, who is confined in the Little Sandy Correctional Complex in Sandy Hook, Kentucky, has filed a *pro se* complaint under 42 U.S.C. § 1983.

This matter is before the court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under § 1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. § 1915(e)(2) affords a court the authority to

dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

CLAIMS

The plaintiff alleges that while he was confined in the Lee Adjustment Center ("LAC") in Beattyville, Kentucky, the defendants, who are employees of the LAC, violated not only his constitutional rights, but the constitutional rights of his wife, Nicole Matheson Lewis.  The plaintiff states that he is black and that his wife is white. He alleges that during April of 2005, when his wife visited him in the LAC on several different occasions, the defendants made racially discriminatory comments to her, verbally harassed and ridiculed her, sexually harassed her, and subjected her to an unnecessary and embarrassing body search.  He alleges that because he is black and his wife is white, he was also subjected to racial discrimination by LAC staff members.

To the extent the allegations relate to racial discrimination and the alleged denial of equal protection of law, the claims arise under the Fourteenth Amendment of the United States Constitution.  To the extent that the allegations relate to the alleged violation of privacy, the claims arise under the First Amendment of the United States Constitution.  The claims regarding unlawful search arise under the Fourth Amendment of the United States Constitution.

NAMED DEFENDANTS

The plaintiff has named the following defendants, all of whom are employees of the LAC: (1) Sherry Gould, correctional officer; (2) Archie Moore, Prison Investigator; (3) Glen Spicer, Correctional Officer; and (4) Randy Stovall, Warden of

2

the LAC.  The plaintiff asserts claims against the named defendants in both their official and individual capacities.

RELIEF REQUESTED

The plaintiff seeks monetary damages in excess of one million dollars from each of the named defendants.  He also seeks a declaratory judgment stating that the defendants' actions were in violation of the Constitution.

ALLEGATIONS OF THE COMPLAINT
1. Completed Complaint Form and Supplement

The plaintiff has filed a pre-printed prisoner § 1983 complaint form and has attached to it a typewritten supplement and two lengthy,  handwritten affidavits of Nicole Matheson, his wife.[1]  The court will summarize the allegations contained in the complaint and attached affidavits.

The plaintiff alleges that on April 5, 2005, Ms. Matheson arrived for a pre-approved visit, the express purpose of which was to enable Matheson and him to be married in a ceremony to be performed at the LAC.  Plaintiff alleges that when Matheson arrived at the LAC, Correctional Officer Sherry Gould began questioning Ms. Matheson about whether her decision to marry the plaintiff was wise, specifically commenting about the facts that Matheson is so young and that the plaintiff is black. The plaintiff alleges that Gould then ordered Matheson to submit to a search of her

---

[1]

The plaintiff identifies his wife as Nicole Matheson Lewis, but in her two affidavits attached to the complaint, she identifies herself as "Nicole Matheson."  Her two affidavits are dated April 19, **2005** and June 29, **2005,** respectively.

person, stating that if Matheson refused to submit, she would not be permitted to marry the plaintiff.   Plaintiff alleges that Gould ordered Matheson to place her (Matheson's) hands in her brassiere, lift up her brassiere, and shake her breasts, exposing her stomach.

Plaintiff complains that Gould made Matheson comply with this order in front of numerous male prison guards.  He argues that Gould should have ordered this type of humiliating search in private. He states that Gould "violated, belittled, disparaged and [made Matheson] very uncomfortable during her marriage to Plaintiff due to the demeaning acts ordered by agent Gould in her search." [Supplement to Complaint, p. 2]

Plaintiff further alleges that Gould continued her pattern of making harassing and demeaning remarks to Matheson after the wedding ceremony concluded.  According to the plaintiff, when Matheson was in the LAC visitation area preparing to leave, Gould stated to her, "I hope he doesn't break your heart."  [*Id.*]

Plaintiff next alleges that Prison Investigator Archie Moore informed Matheson that she could not pay Jerry Fields, the Jefferson County Justice of the Peace, anywhere on the grounds of the LAC.  According to the plaintiff, Moore made Matheson walk off the premises to pay Fields his fee for performing the ceremony. Plaintiff complains that Matheson was required to walk some distance over gravel while wearing high-heeled shoes [*Id.*].

Finally, the plaintiff alleges that since he and Matheson were married on April

4

5, 2005, "defendant's agents at the CCA/LAC, privately owned prison" have subjected Matheson and him to "a continuing pattern of harrassments {sic} and racial discrimination." [*Id.*, p. 3] He explains that the harassment consists of their being made to move to another table during visitation, for no apparent reason. Plaintiff states that if he or Matheson question why they are being made to move, all of the named defendants threaten to terminate his visitation rights [*Id.*].

## 2. Nicole Matheson's Affidavits

In her April 19, 2005, affidavit, Matheson describes the same events as set forth in the plaintiff's complaint form and supplement. She adds more details, describing the mental distress and embarrassment which she states that she experienced as a result of being interrogated and physically searched by Gould on April 5, 2005.

She complains that the LAC failed to inform her that she could bring only a store-bought wedding cake into the facility, not a homemade cake. She complains about the manner and tone of voice in which Defendant Archie Moore informed her that she could not pay the Justice of the Peace on the grounds of the LAC. She complains that a comment was made about time being counted toward the one hour allotted for the ceremony. Finally, she complains about having to walk off the LAC property, over rocks, in high heels, in order to pay Mr. Fields.

In her June 29, 2005, affidavit, Matheson describes events which she claims occurred at the LAC during a visit with the plaintiff on Sunday, June 26, 2005. She

states that upon arrival, she went to the vending machine and then went to the restroom.  As she left the restroom and headed back to the visitation room, Captain Hughes stopped her and informed her that her (Matheson's) clothes were too tight and that she would not be allowed to proceed into the visiting room.  Matheson states that Hughes told her that if she did not have any alternate clothing, she could go to the Dollar Store down the road and buy something else to wear.  Matheson claims that Captain Hughes singled her out and harassed her.  Matheson describes her clothing (a white sweatsuit with red and blue trim) as being non-offensive and very similar to what other women in the visiting area were wearing.

Matheson states that in order not to jeopardize her chance to visit the plaintiff, she went shopping that Sunday, spent $13.00 against her will, and bought something new to wear to the LAC.  After she changed clothes and returned to the LAC, she was permitted to visit the plaintiff.  She states that when she explained to the plaintiff what had happened, he told her that Captain Hughes had told him (plaintiff) that Matheson had been turned away because she had been wearing very visible red thong underwear under a white outfit.  Matheson's affidavit states that Hughes told the plaintiff that when Matheson bent over at the vending machine, Hughes could see the red thong underwear.  Matheson disputes that her underwear was visible.

Matheson then describes an exchange and confrontation she had with Hughes about the reasons for being denied visitation upon arrival.  According to Matheson, the real reason that Hughes would not initially allow her in the visitation area was that she

6

was wearing red-colored thong underwear, of which Hughes apparently did not approve. Matheson states that Hughes slammed down on a table a copy of the dress code and told her that if she (Matheson) ever violated the dress code again, she would permanently terminate Matheson's visitation rights with the plaintiff.

DISCUSSION
1.  Nicole Matheson's Claims

Ordinarily, a party may not assert the rights of others, *County Court of Ulster County v. Allen*, 442 U.S. 140, 154-55, 99 S. Ct. 2213, 60 L. Ed.2d 777 (1979). "When determining whether a party may assert the constitutional rights of others, a court must consider:  (1) whether the relationship of the litigant to the third party is such that the litigant is an effective proponent of the rights of the third party; and (2) whether the third party is hindered in its ability to assert its own rights.  *Singleton v. Wulff*, 428 U.S. 106, 114-16, 96 S. Ct. 2868, 49 L. Ed.2d 826 (1976); *Planned Parenthood Ass'n of Cincinnati, Inc.*, 822 F.2d [1390] at 1394 (6th Cir. 1987)." *Connection Distributing Co. v. Reno*, 154 F.3d 281, 295 (6th Cir. 1998).

Here, the plaintiff gives no reason that Matheson is unable to bring suit in her own right against Gould or any other individual who she claims violated her constitutional rights.  The majority of the plaintiff's complaint is dedicated to allegations concerning actions taken against Nicole Matheson Lewis, who is not a plaintiff in this action.  The plaintiff can assert his own claims alleging violations of constitutional rights, but he does not have standing to assert claims on behalf of another, even his wife.  Constitutional claims are personal and cannot be asserted

7

vicariously.  *See Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997); *see also Russell v. United States*, 308 F.2d 78,79 (9th Cir. 1962) ("A litigant appearing *in propria persona* has no authority to represent anyone other than himself.").

The court will dismiss without prejudice the claims which pertain to alleged violations of Nicole Matheson Lewis's constitutional rights, which she may bring in her own right.  The court notes that to the extent the complaint discusses actions taken against *Nicole Matheson Lewis* on April 5, 2005, those claims appear to be barred by the applicable statute of limitations.

Kentucky has a one-year statute of limitations on personal injury actions, K. R .S. § 413.140, which is applicable to § 1983 claims.  *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Collard v. Kentucky Board of Nursing*, 896 F.2d 179 (6th Cir. 1990); *Demery v. City of Youngstown*, 818 F.2d 1257, 1261 (6th Cir. 1987).   Nicole Matheson Lewis (in her affidavit) and the plaintiff allege constitutional violations directed at Nicole Matheson Lewis which occurred on April 5, 2005.  The complaint was not filed until over a year later, on April 7, 2006.  The  actions alleged to have occurred against the plaintiff's wife on April 5, 2005, would be appear to be time-barred.  The actions arising on June 26, 2005, would not appear to be time-barred.

## 2.  Plaintiff's Claims

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other issues incident to prison life, to exhaust all available administrative remedies before

suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S. Ct. 983 (2002); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999). Under federal law, it is insufficient for a prisoner to claim merely that grievances were not answered satisfactorily or to begin the grievance process and not finish it. Prisoners may not short-circuit the exhaustion requirement by alleging the futility of going further, and then ask the courts to rule they have done enough. *See Fisher v. Wickstrom*, 230 F.3d 1358, 2000 WL 1477232 (6th Cir. Sept. 25, 2000).

In this case, the plaintiff states that he "filed a number of Grievances against each of the parties named above to no avail. See the attached document's [copies of Grievances] [sic]." [Complaint Form, § II (A) (3)] The court has carefully examined all of the documents which the plaintiff has filed and can find no grievances attached. Moreover, even if the plaintiff had merely attached copies of grievances filed within the LAC, that would have been insufficient.

The Kentucky Department of Corrections ("KDOC") has promulgated a set of administrative regulations at 501 KAR 6:010, which govern prison grievance procedures. The plaintiff was required to comply with these procedures. They are referred to as "Corrections Policies and Procedures" ("CPP"). The CPP which addresses inmate grievances is found in § I (1) of Policy Number 14.6, "the *Inmate Grievance Process*." This provision states that a prisoner in a state correctional institution must informally attempt to grieve a claim with the Grievance Aide, the Grievance Coordinator, the department head, or institutional staff.

If the attempt at informal resolution fails, he must seek a hearing before the Grievance Committee [*Id.*, § (2)].  The Committee's decision must be forwarded to the warden, who is responsible for making a final written decision [*Id.*, § 2(c)-(d)].  A prisoner who is not satisfied with the warden's final decision may appeal that decision to the Commissioner of the KDOC  by using a specific form described in § 3(a) of the *Inmate Grievance Process*.

Here, the plaintiff does not indicate that he appealed any decision either to the Warden of the LAC or, having failed there, to the Commissioner of the KDOC.   In sum, the instant plaintiff has offered nothing to indicate that he followed the various steps set forth in CPP Policy Number 14.6 with regard to his First and Fourteenth Amendment claims.  For that reason, these claims have not been exhausted and must be dismissed without prejudice.  28 U.S.C. § 1915(e)(2)(ii).[2]

<u>CONCLUSION</u>

Accordingly,  **IT IS ORDERED** as follows:

(1)    The complaint is **DISMISSED WITHOUT PREJUDICE**.

(2)    Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

---

[2]

Although not entirely clear at this time, the claims which the plaintiff asserts in connection with the April 5, 2005, incident at the LAC may also be barred by the statute of limitations.

10

Signed on May 8, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

11